UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: DANIEL EDWARDS and KARON EDWARDS                CASE NO. 09-13369

OPINION

On consideration before the court is an objection to confirmation filed by the Chapter 13 trustee ("Trustee"); a response to said objection having been filed by the debtors, Daniel Edwards and Karon Edwards; oral arguments and memoranda of law having been respectively presented and submitted by the parties; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is core contested proceeding as defined in 28 U.S.C. §157(b)(2)(A), (L), and (O).

II.

On July 2, 2009, the debtors filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code. Along with their petition and schedules, they filed a "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," referred to hereinafter as "Form B22C." Without dispute, the debtors' income is greater than the applicable median family income for a comparable household in the State of Mississippi. As such, they would generally be referred to as above median income debtors. In

determining projected disposable income for the purpose of confirming a proposed Chapter 13 plan, the following Bankruptcy Code[1] sections must be considered, to-wit:

1)  Section 1325(b)(1)(B) which provides that if the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, the court may not approve the plan unless, as of the effective date of the plan, the plan provides that all of the debtors' projected disposable income, to be received in the applicable commitment period beginning on the date that the first payment is due under the plan, would be applied to make payments to unsecured creditors.

2)  Section 1325(b)(3) which provides that the amounts reasonably necessary to be expended for the purpose of calculating disposable income should be determined in accordance with subparagraphs (A) and (B) of §707(b)(2) for above median income debtors.

The expenses, described in §707(b)(2)(A) and (B), are those that are specified for the "means test" promulgated under the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 (BAPCPA). These expenses are delineated pursuant to standards enacted by the Internal Revenue Service which are found in the Financial Analysis Handbook, a part of the Internal Revenue Manual. These standards were adopted by the Internal Revenue Service to assist their field agents in assessing a tax payer's ability to repay delinquent taxes. There are two types of standards: national standards which apply nationwide to specific categories of expenses and local standards which apply to transportation and housing/utilities expenses which vary by the county of residence in each state.

---

[1] Hereinafter, all Code sections will be considered as sections of the U.S. Bankruptcy Code unless designated otherwise.

On their Form B22C, the debtors herein claimed the following expense deductions which are relevant to this proceeding:

Line 27(A) (Local Standards: transportation; vehicle operation/public transportation expense) - 2 or more vehicles - $402.00.

Line 28 (Local Standards: transportation ownership/lease expense; Vehicle 1) - $489.00.

Line 29 (Local Standards: transportation ownership/lease expense; Vehicle 2) - $489.00

The trustee objected to the debtors' deduction of the $489.00 ownership expense on Line 28 and Line 29 because the debtors own both of their vehicles free and clear of any debts or lease obligations. This objection and the debtors' response form the issue to be determined by the court.

Relevant to this proceeding are the debtors' Schedule I - Current Income of Individual Debtor(s), as well as, Schedule J - Current Expenditures of Individual Debtor(s). On Schedule I, the debtors listed a combined average monthly income in the sum of $4,491.49. On Schedule J, they listed average monthly expenses in the sum of $4,154.13. As such, their combined monthly income exceeds their average monthly expenses by $337.36. The debtors stated in their memorandum that the Chapter 13 trustee had no objection to their disclosure of income on Schedule I or their claims of expenses on Schedule J.

For comparative purposes, on Form B22C at Line 52, the debtors total current monthly income is reflected as $7,190.10. The adjustments to determine disposable income are set forth on Line 58 in the sum of $7,022.24, which results in a monthly disposable income of $167.86. Of course, the adjustments to determine disposable income include the deductions at Line 28 and Line 29 in the sum of $489.00 each.

3

In their Chapter 13 plan, the debtors propose to pay to the Chapter 13 trustee the sum of $74.00 per week or $320.67 per month, of which $253.66 per month is committed to general unsecured creditors. The unsecured debts total $60,021.41, and are to be paid $15,005.35 or approximately 25%.

### III.

This court has previously addressed the issue of whether above median income Chapter 13 debtors can claim a deduction on Form B22C for a transportation ownership expense when there is no underlying debt or lease obligation owed on the vehicle. *See, In re White*, 393 B.R. 436 (Bankr. N.D. Miss. 2008). In reaching its conclusion in *White*, this court compared *In re Ransom*, 380 B.R. 799 (9th Cir. BAP 2007), which relied on the adjective "applicable," set forth in §707(b)(2)(A)(ii)(I), in rendering a decision disallowing the standard ownership deduction, and *In re Pearson*, 390 B.R. 706 (10th Cir. BAP 2008), which permitted the deduction under the same circumstances. As a "scorecard," the *Pearson* court in footnotes 3 and 4 listed all of the opinions that had either allowed or disallowed the deduction.

Relying primarily on what it perceived to be the Congressional intent underpinning §1325(b)(1)(B), which is to insure that debtors repay as much of their debt as reasonably possible, this court disallowed the deduction. This court was also influenced by the fact that if there were changes in circumstances post-confirmation, such as the necessity to replace the debtors' vehicle, the better practice would be to liberally allow plan modifications pursuant to §1329(a). In its opinion, the court offered the following, to-wit:

> ....This is an approach that deals with reality, rather than artificiality. Refusing to permit the debtors to deduct an ownership expense when there is no actual underlying debt results in an increased distribution to unsecured creditors, even if

4

only for a temporary period, with monies that are actually available. This may not be a perfect solution. However, since the debtors can deduct the standard <u>operation</u> expense, as well as, the annual personal property taxes attributable to the vehicle, this approach seems to be fairer than allowing the debtors to deduct the <u>ownership</u> expense when there is no debt which could understandably be perceived as a "windfall" for the debtors. This rationale conforms to the Congressional intent, as perceived by this court, of §1325(b)(1)(B).

*In re White*, 396 B.R. at 443.

## IV.

Subsequent to this court's *White* decision, the Fifth Circuit Court of Appeals addressed a similar, but not identical, issue in *Matter of Tate*, 571 F.3d 423 (5th Cir. 2009). The debtors, Troy Edwin Tate and Elaine Burris Tate, whose income exceeded the state median level, filed a Chapter 7 bankruptcy case. To determine if they were eligible for Chapter 7 relief, the Tates were required to qualify through a "means test" analysis. Mechanically, the means test takes the debtors' current monthly income, as defined in §101(10A), and reduces it by allowed deductions set forth in §707(b)(2)(A)(ii)-(iv). If the debtors have sufficient disposable income to pay their unsecured creditors at least $166.67 each month, (slightly more than $10,000.00 over five years), they are ineligible for Chapter 7 relief because their filing is considered presumptively abusive. Similar to the Chapter 13 proceeding now before this court, the Tates, in their means test analysis, claimed the ownership deduction for two vehicles which were not encumbered by underlying debts or lease payments.

In its opinion, the Fifth Circuit examined several cases that had decided this issue, including *In re Ransom*, 380 B.R. 799 (9th Cir. BAP 2007), and *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (8th Cir. BAP 2008), but relied more extensively on *Ross-Tousey v. Neary (In re Ross-Tousey)*, 549 F.3d 1148 (7th Cir. 2008). The court noted that there were two basic

5

approaches to resolve this issue: (1) The "plain language approach," which allows the vehicle ownership deduction even if the debtors have no monthly payment associated with the vehicle, and (2) The "IRM (Internal Revenue Manual) approach," which does not. The Fifth Circuit then adopted the "plain language approach," which had been followed by the Seventh Circuit in *Ross-Tousey*, as providing the best reading of §707(b)(2)(A)(ii)(I). Thus, for purposes of determining Chapter 7 eligibility, it is clear that debtors in the Fifth Circuit will be permitted to utilize the standard ownership deduction even when there is no underlying debt or lease obligation owed on the vehicle.

The question now before this court is whether the approach adopted in the *Tate* decision for Chapter 7 debtors also applies to the methodology that Chapter 13 above median income debtors must utilize in calculating projected disposable income which is to be committed to unsecured creditors over the life of their Chapter 13 plan. Admittedly, this court had a difficult time in deciding this issue in *White*. Since the identical Bankruptcy Code sections are implicated, should there be a substantive difference in deciding whether a debtor is eligible for Chapter 7 relief from deciding the amount of a Chapter 13 debtor's projected disposable income? In the *White* opinion, this court pointed out that the relevant statutes, when considered together, do not provide clear guidance as to their practical application. Their conjunctive meaning is far from "plain." After weighing the various competing factors, this court found that the language in §1325(b)(1)(B) simply did not contemplate an "artificial" deduction when there was no underlying debt. That appeared to be consistent with one of the primary objectives of BAPCPA which, as noted hereinabove, was to insure that debtors repay as much of their debt as reasonably possible. Material changes in circumstances could appropriately be addressed through a plan

modification proceeding which is permissible pursuant to §1329(a) of the Bankruptcy Code. This concept was discussed by the Fifth Circuit when deciding *In the Matter of Nowlin*, 576 F.3d 258 (5th Cir. 2009).

Did the Fifth Circuit intend its *Tate* decision to dictate the procedure for determining projected disposable income in a Chapter 13 case? In addition to relying on the Seventh Circuit's *Ross-Tousey* decision, the Fifth Circuit cited with approval *Hildebrand v. Kimbro (In re Kimbro)*, 389 B.R. 518 (6th Cir. BAP 2008). The following quote from *Kimbro* appears in the *Tate* opinion, to-wit:

> Congress intended that there be uniform and readily-applied formula for determining when the bankruptcy court should presume that a debtor's chapter 7 petition is an abuse and <u>for determining an above-median debtor's disposable income in chapter 13</u>. By explicitly referring to the National and Local Standards, Congress incorporated a table of standard expenses that could be easily and uniformly applied; Congress intended that the court and parties simply utilize the expense amount from the applicable column based on the debtor's income, family size, number of cars and locale. <u>The amounts are entered into the means test form and a determination of disposable income is accomplished without judicial discretion</u>. The clear policies behind the means test were the uniform application of a bright-line test that eliminates judicial discretion. Plainly, Congress determined that these policies were more important than accuracy. (emphasis supplied)
>
> However, if the IRM were used to determine the amounts of expenses...the means test would of necessity again be a highly discretionary test, because under the IRM, a revenue officer is afforded significant discretion in determining a taxpayer's ability to pay a tax.

*Tate*, 571 F.3d at 427-28 (citing *Kimbro*, 389 B.R. at 527-28).

The aforementioned quotation indicates to this court that the Fifth Circuit intended its *Tate* decision to apply to Chapter 13 proceedings. Therefore, the debtors herein will be permitted to take the two standard ownership deductions in the sum of $489.00 each even though they have

no underlying debt or lease obligations owed on their vehicles. This effectively reduces the debtors' projected disposable income by the sum of $978.00 per month. As such, the Chapter 13 trustee's objection to confirmation is not well taken and will be overruled by a separate order to be entered contemporaneously herewith.

This the 13th day of November, 2009.

/s/ David W. Houston, III
DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE